## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QIN'S, INC.<br>302 Carson Avenue, Suite 601<br>Las Vegas, NV 89101,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR LINK INTERNATIONAL,<br>INC.<br>380 S. Lemon Avenue<br>Walnut, CA 91789,<br>and<br>HARTFORD FIRE<br>INSURANCE COMPANY<br>One Exeter Plaza, 3rd Floor<br>Boston, MA. 02116.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Court No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR ENFORCEMENT OF ORDERS ISSUED
## BY THE FEDERAL MARITIME COMMISSION

Plaintiff, Qin's Inc. ["Qin"], by and through its undersigned attorneys, bring this cause

of action to enforce two (2) orders issued by the Federal Maritime Commission ["FMC"]

against Superior Link International, Inc. ["Superior"] and Hartford Fire Insurance Company

["Hartford"], and, states the following:

1.    This Court has jurisdiction pursuant to 28 U.S.C. §1331 as the FMC orders

were issued under the laws of the United States and 46 U.S.C. §41309 as the defendants have

not paid reparations or an award of attorneys fees ordered by the FMC.

1

2.     Venue is proper in this Court as the orders were issued by the FMC, an agency located in the District of Columbia.

3.     Qin is incorporated and does business in the State of Nevada.

4.     Superior is an ocean transportation intermediary [also known as a non-vessel operating carrier] incorporated in California and doing business in California.

5.     Hartford is a surety company within the meaning of 46 U.S.C. §40902 and has a business address in Boston, Massachusetts.

6.     In a decision of July 18, 2006 the FMC ordered Superior to pay reparations of $7,250.00 with interest from August 6, 2003 of $609.50 for a total of $7,859.50 to Qin. A copy of the decision is enclosed as Exhibit B.

7.     In an order dated January 9, 2007 the FMC directed Superior to pay Qin $20,917.50 in attorney fees.  A copy of the decision is enclosed as Exhibit A.

8.     Undersigned counsel made demands on Superior to pay these sums but they have not been paid to date.

9.     Hartford was Superior's FMC's surety on the dates in 2003 which led to the award of reparations.

10.     Undersigned counsel made demands on Hartford to pay these sums but they have not been paid to date.

11.     This action is being brought within 3 years as provided at 46 U.S.C. §41309(e).

### COUNT I

Qin realleges paragraphs 1-11.

2

12.    The reparations and attorney fees ordered to be paid by the FMC were in accordance with 46 U.S.C. §41305(b).

13.    The reparation order arose out of transportation-related activity.

14.    Enforcement of reparation orders is within the jurisdiction of the district courts pursuant to 46 U.S.C. §41309.

15.    Reparation orders include reasonable attorney fees as provided at 46 U.S.C. §41305(b).

16.    Superior has failed to pay reparations and attorney fees to Qin as provided by the FMC orders.

WHEREFORE Qin respectfully requests the Court to enter judgment for Qin against Superior for reparations including interest and attorney fees; and, for costs and reasonable attorney fees in bringing this cause of action as provided for at section 41309(d).

## COUNT II

Qin realleges paragraphs 1-16.

17.    Hartford was Superior's surety for the purposes of 46 U.S.C. §40902. Attached as Exhibit C is Hartford's surety obligation for Superior provided to the FMC.

18.    Hartford's bond, JGINVOCC198, provided that it would pay any judgments for damages obtained against the principal, Superior.

19.    The bond was duly filed with the FMC and remained in effect during all relevant times.

20.    Since Superior has not paid the FMC ordered reparations and included attorney

3

fees, Hartford is available to pay these amounts pursuant to 46 U.S.C. §40902(b)(1).

21.    Hartford has been timely advised, attached as Exhibit D, of the FMC orders; that Superior has not paid the reparations and attorney fees; and, has failed to pay these amounts  pursuant to its surety bond obligations.

WHEREFORE, Qin respectfully requests the Court to enter judgment for Qin against Hartford for reparations including interest and attorney fees; and, for costs and reasonable attorney fees in bringing this cause of action as provided for at section 41309(d).

Respectfully submitted,

Peter S. Herrick, P.A.
Peter S. Herrick
Attorney for the Plaintiff
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Email pherrick@bellsouth.net
D C Bar 137935

4

# EXHIBIT A

```
(S     E     R     V     E     D )
(          July 18, 2006          )
(FEDERAL MARITIME COMMISSION)
```

## FEDERAL MARITIME COMMISSION

### WASHINGTON, D. C.

July 18, 2006

### DOCKET NO. 04-08

### QIN'S, INCORPORATED

v.

### SUPERIOR LINE INTERNATIONAL, INC.

_____

### INITIAL DECISION

_____

### INTRODUCTION

Qin's Inc. brought this complaint against the respondent Superior Link International, Inc. (Superior), alleging that respondent violated section 10(d)(1) of the Shipping Act of 1984, 46 U.S.C. App. § 1709(d)(1) in connection with the shipment of cargo from China to the United States. Superior is a non-vessel operating common carrier subject to the jurisdiction of the Commission.

Section 10(d)(1) provides that "No common carrier, ocean transportation intermediary, or marine terminal operator may fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property." Qin's contends that Superior violated this provision by refusing to authorize the release of the cargo after receiving payment of the freight charges, with the result that the cargo became subject to demurrage, forcing Qin's to pay the demurrage to obtain release of the cargo.

After discovery both sides submitted briefs and evidence on this matter. Counsel for both sides indicated that they did not believe that a live hearing was necessary and the decision has accordingly been made based on the documentary evidence submitted by both sides.

### BACKGROUND

SHIPMENT OF THE CARGO

The complainant, Qin's Inc., contracted with Superior to ship 2 containers of tableware from China to a customer in Charlotte, North Carolina under Superior's bill of lading number

025756726 (prepared in triplicate) dated January 10, 2003. Superior arranged shipment on the President Grant, a vessel operated by American President Lines, Ltd (APL) under APL's bill of lading number 205756726. Qin's was the shipper under Superior's bill of lading and Superior was the shipper under APL's bill of lading. APL did not have a contractual relationship with Qin's in connection with the shipment.

On January 30, 2003 Superior sent an arrival notice to Qin's, providing the anticipated arrival date, freight charges, and requirements for release of the goods. The arrival notice included a statement that "we can only release the freight to you upon receipt of charges shown below and properly endorsed original house bill of lading."

Qin's sent a check for the freight charges by FedEx on February 4, 2003. The FedEx package was sent to Superior's office in Walnut, California. The street address was incorrect (Deposition of Lisa Wong, p. 14). However, it is apparent that the package was promptly delivered because Superior negotiated the enclosed check. The check cleared on February 6, 2003.

There is a dispute between the parties over whether the original endorsed bill of lading was enclosed in this FedEx shipment. Qin's contends that it was (deposition of Marcia Chin) and Superior (Deposition of Lisa Wong) that it was not. Unfortunately for our purposes, the records of a parcel company like FedEx can show when a package was delivered, but not what it contained.

The containers arrived in Charlotte on February 24, 2003. APL provided 7 free days of storage, after which demurrage would begin to accrue. Superior sent a second arrival notice on February 25, 2003, reiterating the conditions necessary for release of the cargo. Superior did not pay the freight charge to APL before the free period ended and on March 4, 2003 APL began charging demurrage.

By April things had come to such a pass that APL was contemplating selling the cargo at auction to satisfy the demurrage. On April 17, 2003 Qin's attorney sent an original bill of lading to Superior. Qin's contends that this was the second tender of the bill of lading, while Superior contends that it was the first. Superior paid the ocean freight charges to APL on May 2, 2003, but did not pay demurrage. By this time substantial demurrage had begun to accrue and APL would not release the cargo until the demurrage was paid.

DISTRICT COURT LAWSUIT

Because Qin's was not a party to APL's bill of lading, APL declined to release the containers to Qin's consignee or to negotiate with Qin's for their release. APL declined Qin's offer to pay the freight charges and demurrage directly to APL to obtain release of the cargo. Eventually, Qin's filed an action against APL and Superior in the U.S. District Court for the Western District of North Carolina to seek the release of the containers.

While the district court action was pending demurrage continued to accrue. On August 6, 2003 the demurrage charge had risen to $37,240.00. Qin's paid $7,250.00 toward the demurrage and, in consideration of this payment, APL released the containers. This resolved the dispute between Qin's and APL, but left each of them with a claim against Superior. APL proceeded with its

- 2 -

claim for the remaining demurrage in the district court action. In addition, Superior filed a counterclaim against Qin's for indemnification if it was required to reimburse APL for the remaining demurrage. Qin's is seeking in the present complaint before the Commission to obtain reparations against Superior to reimburse it for the demurrage that it paid to APL.

On April 2, 2004 the District Court granted APL's motion for summary judgment in its cross complaint against Superior. In addition, the court dismissed claims brought by Qin's alleging fraud and breach of fiduciary duty by Superior. On November 9, 2004 the Administrative Law Judge formerly assigned to this case denied Superior's motion to dismiss the complaint on the grounds of res judicata. He noted that, while both actions involved the same transaction, the specific claim of violation of the Shipping Act had not been involved in the District Court lawsuit. He held, further, that limitations on the District Court's jurisdiction to decide Shipping Act issues or to award reparations for violations of the Shipping Act constituted an exception to the res judicata doctrine.

THE PARTIES' PENDING CLAIMS

To recapitulate the status of the claims among the three parties, APL is no longer involved in prosecuting or defending any claims. Qin's paid APL a portion of the demurrage to obtain release of the containers, and the District Court gave judgment for APL against Superior for the remainder. Qin's and Superior each have a claim against the other for the fraction of the total demurrage that they have paid to APL.

Qin's theory is that Superior received payment of the freight charges and the bill of lading before the free time expired. Therefore, by failing to authorize APL to release the containers to Qin's consignee, Superior caused the demurrage to accrue.

Superior's theory is that Qin's failed to surrender the bill of lading before the end of the free time. By the time the bill of lading was received in April, demurrage had begun and APL would not release the cargo until the demurrage was paid. The District Court held that under APL's bill of lading Superior was liable to APL for the demurrage. Superior contends that it is entitled to reimbursement from Qin's for the demurrage that it was required to pay to APL.

## DISCUSSION

In resolving the factual issues raised by the deposition testimony it must be borne in mind that on the key point the witnesses are testifying that their companies followed their standard operating procedure. Qin's routinely sends, and Superior routinely receives, bills of lading and shipping payments. In the ordinary course of business the payment and bill of lading are sent and received together, the cargo is released to the shipper or consignee, and conflicts such as this do not arise.

Marcia Chin, Vice President of Qin's, testified that the February 4 FedEx envelope contained an endorsed original bill of lading and Lisa Wong, owner of Superior, testified that it did not. Both witnesses were testifying in accordance with the interests of their companies but that fact alone does not give any reason to doubt the sincerity of either witness. Each of them testified that her

company acted in accordance with its standard operating procedure on a routine transaction, and it is overwhelmingly likely that each of them sincerely believes that to be the case.

FedEx records reflect that the package was signed for by "L. Wong." Ms. Wong testified (Deposition, pp. 16-17) that she signed for the February 4 package. She did not ordinarily receive such packages, but if she happened to be in the reception area she might be the one to sign for incoming packages. Later in her deposition (p. 56) she examined the signature again and was less certain that she had signed for the package.

It is not necessary to resolve the issue of whether it was Ms. Wong or another employee of Superior who signed for the package because even if she did sign for it she did not open it.

She noted in her deposition that even if she received and signed for a package of that type she would not open it but would pass it to one of the members of her operations staff, identified as Kenny and Terry. She added that upon opening an envelope they would not ordinarily tell her what was in it because she did not handle the operational work. In this case they would have notified the company's New York office because that office handled shipments destined for the U.S. east coast.

Ms. Wong went on to testify that she believed that "a girl named Rachel" in Superior's New York office notified Qin's by telephone or fax that the house bill of lading was missing (Deposition, p. 18). Rachel was no longer employed by Superior at the time of the deposition and did not provide evidence.

Ms. Wong also testified (Deposition pp 25-26) that she had a conversation with Mr. Chin of Qin's at the end of February or early March in which she told him that the last free day was coming and that he needed to pick up the cargo. At this time Qin's could not have picked up the cargo because Superior had neither authorized APL to release it nor paid the ocean freight to APL. Ms. Wong did not testify to having told Mr. Chin either that Superior had not released the cargo or that Superior was still waiting for the surrender of the house bill of lading to obtain release of the cargo.

The only document in the record that could be argued to put Qin's on notice that Superior had not received the bill of lading with the payment was a second arrival notice dated February 25, 2003. According to Ms. Wong, this notice was "not really a bill" and the primary reason for sending it was to notify Qin's of a change in the estimated time of arrival (ETA) in Charlotte because of a delay in the inland movement of the containers (Deposition, p.22).

An original house bill of lading either was or was not in the February 4 FedEx package. Qin's standard procedure was to send the check and bill of lading together. Superior's standard procedure on receiving payment and a bill of lading was to pay the carrier its freight charge and release the cargo for delivery. Mistakes are made in even the most routine transactions and in this case one of the parties failed to comply with its standard procedures.

Either Qin's failed to include the bill of lading in the package, or Superior failed to process it properly upon opening the package. It is impossible to say with absolute certainty which of these events occurred, although Ms. Chin's testimony is supported by more personal knowledge

- 4 -

than that of Ms. Wong. Ms. Chin testified that she put both documents in the envelope. Ms. Wong testified that she did not open it. In the ordinary course of business either Kenny or Terry would have opened it and, because it was an east coast shipment, would have forwarded the contents to Superior's New York office. Neither Kenny nor Terry nor any of the staff of the New York office provided testimony.

Superior's counsel notes three possibilities: either "(1) Qin's mistakenly failed to include the bill of lading with payment or (2) SPL never received it because Qin's sent it to the wrong address or (3) SPL misplaced it." The second of these can be excluded because the check in the misaddressed envelope was promptly received and negotiated. Therefore, the package arrived, in spite of the incorrect address. Counsel concedes the possibility that Superior may have misplaced the bill of lading, but notes that if that was the case, Qin's could have remedied the situation by sending another of the original bills of lading before the free storage time expired.

Somehow, with both parties believing that they had acted in accordance with their standard procedures, this case ended up with the cargo being threatened with sale at auction months after Qin's paid the freight charges, and action brought before the District Court to obtain release of the cargo. In trying to understand how what should have been a routine shipment came to this drastic state of affairs it is impossible to say with certainty whether an original bill of lading was or was not in the February 4 FedEx package. However, in assessing the reasonableness of the parties' actions it is necessary to consider not only the disputed contents of the package. Events after the receipt of the February 4 package also bear on the issue of reasonableness.

The crucial date is March 3, 2003, the day that free time with APL expired. Before that date APL was in effect a stakeholder of the cargo, needing only to have its freight paid and to receive authorization from its customer, Superior, to release the cargo to Qin's consignee. After that date demurrage had to be paid to obtain release of the cargo, and that demurrage became the subject both of the District Court action and of this complaint.

Even without knowing whether the bill of lading was sent on February 4, it is clear what each party knew and believed at the critical time period. Qin's knew that the FedEx package was delivered and the check had cleared, so they believed that the bill of lading, which they believed to have been in the envelope, had been received and that the cargo would be available for delivery soon after it arrived in Charlotte. Superior believed that the bill of lading had not been included with the check and therefore still had to be sent.

The two arrival notices, dated January 30, 2003 and February 25, 2003 are substantially identical in form. The first gives a Final ETA of "2/10/03," while the second amends that date to "2/25/03." The lower section of the form labeled "Freight Invoice" is identical in both notices and contains the following text:

TO ALL CUSTOMERS:

1. PLEASE SEND MONEY ORDER OR CASHIER'S CHECK PAYABLE TO "SUPERIOR LINK INTERNATIONAL INC.," *ONLY BROKERS' CHECK WILL BE ACCEPTED

- 5 -

2. WE CAN ONLY RELEASE THE FREIGHT TO YOU UPON RECEIPT OF CHARGES
   SHOWN BELOW AND PROPERLY ENDORSED ORIGINAL HOUSE BILL OF
   LADING.
3. PRIOR TO CARGO PICK-UP, CONSIGNEE MUST CLEAR CUSTOMS AND
   CONFIRM FREIGHT RELEASE WITH PIER/CFS. *PLEASE PICK-UP YOUR
   CARGO ASAP TO AVOID UNNECESSARY CHARGES.
4. THESE CHARGES ARE FOR THE ACCOUNT OF ULTIMATE CONSIGNEE TO
   WHOM THIS FREIGHT IS RELEASED.

In the absence of personal knowledge by Ms. Wong or evidence from the former employee
named Rachel, there is only one form of notice, the existence of which is clearly established,
between receipt of the February 4 package and the start of demurrage. That is the February 25
arrival notice.

Paragraph 2 of the Freight Invoice portion of the arrival notice does specify the requirement of
providing an endorsed original house bill of lading, but it also specifies the requirement for
payment of the freight charges before the cargo will be released. When Qin's received the
February 25 notice they knew that the freight charges had been received and the check
negotiated more than two weeks earlier. They believed that the endorsed bill of lading had been
received in the same package.

Based on what Qin's knew and believed, the most logical interpretation of the February 25 notice
was that it was merely sent to inform them of the modified ETA. Indeed, Ms. Wong testified
that that was why the second notice was sent. With nothing else to go on, the clear inference for
Qin's to draw would be that the Freight Invoice language that was repeated verbatim from the
January 30 notice was boilerplate that was no longer applicable, because Superior had already
received the freight payment and bill of lading.

The bill of lading may have been left out of the February 4 package through an oversight by
Qin's, or it may have been included in the package and mislaid by Superior. Regardless of how
this discrepancy occurred, there was ample time to correct it before demurrage began to accrue.
Three original bills of lading were issued, so Qin's could have sent another one, as they in fact
did on April 17. However, there was no reason for them to do that unless they were put on
notice before the free period ended that Superior did not have the bill of lading. The February 25
second notice of arrival cannot be read to have put Qin's on notice of any discrepancy in the
processing of the bill of lading that they reasonably believed had already been received.

In the absence of other evidence, there is no basis to conclude that Superior took any action
during the period of approximately one month between receipt of payment of the freight charges
and the beginning of demurrage to put Qin's on notice that the bill of lading was either missing
or misplaced. Whether or not Superior misplaced the bill of lading, by failing to put their
customer clearly on notice of why the cargo had not been released for pickup during the lengthy
period before demurrage began, Superior failed to observe and enforce reasonable practices
relating to storing and delivering property.

## RULING

Reparations are awarded to the complainant in the amount of $7,250.00, with interest from August 6, 2003.

*K A Krantz*

Kenneth A. Krantz
Administrative Law Judge

(FEDERAL MARITIME COMMISSION)

## FEDERAL MARITIME COMMISSION

### DOCKET NO. 04-08

### QIN'S INCORPORATED

### V.

### SUPERIOR LINK INTERNATIONAL, INC.

### NOTICE

Notice is given that the time within which the Commission could determine to review the July 18, 2006 initial decision in this proceeding has expired.   Accordingly, the decision has become administratively final.

Pursuant to 46 CFR 502.253, respondent shall pay complainant interest of $609.50, resulting in reparations and interest totaling $7859.50, which amount shall be paid to complainant by September 6, 2006.

Bryant L. VanBrakle
Secretary

# EXHIBIT B

```
S    E    R    V    E    D
      January 9, 2007
FEDERAL MARITIME COMMISSION
```

# FEDERAL MARITIME COMMISSION

## WASHINGTON, D. C.

### DOCKET NO. 04-08

### QIN'S, INCORPORATED

### v.

### SUPERIOR LINK INTERNATIONAL, INC.

-----

## MEMORANDUM AND ORDER ON ATTORNEY FEES

-----

On July 18, 2006, my predecessor as administrative law judge for the Commission issued an Initial Decision awarding reparations to complainant Qin's, Incorporated (Qin's) pursuant to the Shipping Act of 1984. 46 U.S.C. § 40101, *et seq.* On August 22, 2006, the Commission issued an order stating that it had decided not to review the Initial Decision; therefore, the Initial Decision is administratively final. 46 C.F.R. § 502.227. On August 28, 2006, Qin's filed a petition for attorney fees. Qin's and respondent Superior Link International, Inc. (Superior) have had ample opportunity to brief this issue and it is now ripe for decision. As discussed more fully below, I have determined that Qin's is entitled to an award of attorney fees pursuant to the Shipping Act of 1984. 46 U.S.C.

§ 41305(b). I have determined that the reasonable hourly rate for services performed by lead counsel Peter S. Herrick is $250.00, and the reasonable hourly rate for services performed by his associate Roy Leon is $200.00. I have determined that Qin's should receive attorney fees for 33.75 hours of services performed by Mr. Herrick and 62.40 hours of services performed by Mr. Leon. Therefore, Qin's is entitled to an award of attorney fees in the amount of $20,917.50.

## I. FACTS AND PROCEDURAL BACKGROUND.[1]

The underlying case involves the liability for demurrage that accrued from the delay in delivery of two containers shipped by Qin's from China to Charlotte, North Carolina.

Qin's contracted with Superior to ship two containers containing tableware from China to a customer in Charlotte, North Carolina. Superior is a non-vessel operating common carrier subject to the jurisdiction of the Commission. Superior arranged shipment on the President Grant, a vessel operated by American President Lines, Ltd (APL). Qin's was the shipper under Superior's bill of lading and Superior was the shipper under APL's bill of lading. APL did not have a contractual relationship with Qin's in connection with the shipment.

On January 30, 2003, Superior sent an arrival notice to Qin's setting forth the anticipated arrival date, freight charges, and requirements for release of the containers. The arrival notice included a statement that "we can only release the freight to you upon receipt of charges shown below and properly endorsed original house bill of lading." Qin's maintained that on February 4, 2003, it sent by Federal Express an endorsed original bill of lading and a check for the freight

---

[1] The facts are summarized from the Initial Decision and the other papers filed in this case. The procedural background is taken from the record before the Commission and from the record in the parallel proceeding in the United States District Court for the Western District of North Carolina. *Qin's, Inc. v. American President Lines, Ltd. and Superior Link International, Inc.*, No. 03:03 CV 193 (W.D.N.C.) (April 29, 2003) (filed). See 46 C.F.R. § 502.226 (official notice of public documents).

charges stated in the arrival notice to Superior's office in Walnut, California. Although Qin's used an incorrect street address, the package was correctly delivered because Superior negotiated the enclosed check. The check cleared on February 6, 2003. In the proceedings before the FMC and before the district court, however, Superior contended that it did not receive the bill of lading with the check for the freight charges.

The containers arrived in Charlotte on February 24, 2003. APL provided seven free days of storage, after which demurrage would begin to accrue. On February 25, 2003, Superior sent Qin's a second arrival notice identical to the first reiterating the conditions necessary for release of the cargo. Although by this date Superior had received and negotiated the check Qin's sent for the freight charges, this second arrival notice reiterated that "we can only release the freight to you upon receipt of charges shown below and properly endorsed original house bill of lading."

Superior did not pay the freight charge to APL before the free period ended, and the containers were not released to the consignee. Consequently, on March 4, 2003, APL began charging demurrage at the rate of $100.00 per container per day for the first five days and at the rate of $120.00 per container per day thereafter.

By April, APL was contemplating selling the cargo at auction to satisfy the demurrage. On April 17, 2003, Qin's attorney sent an endorsed original bill of lading to Superior. In the proceedings before the FMC and before the district court, Qin's contended that this was the second tender of the bill of lading, while Superior contended that it was the first.

Qin's contacted APL seeking release of the containers, but APL would not negotiate with it since APL and Qin's did not have a contractual relationship. On April 29, 2003, Qin's filed a civil action in the United States District Court for the Western District of North Carolina, *see* footnote 1, *supra*, seeking relief against APL and Superior. On May 2, 2003, three months after

-3-

receiving the payment from Qin's, Superior forwarded the ocean freight charges to APL, but did not pay the accrued demurrage. By this time substantial demurrage had accrued and APL would not release the cargo until the demurrage was paid.

By August 6, 2003, the demurrage charge had risen to $37,240.00. Qin's paid $7,250.00 to APL toward the demurrage leaving a balance due of $29,990.00. In consideration of this payment, APL released the containers. This resolved the dispute between Qin's and APL, but left each of them with a claim against Superior. APL proceeded with its claim for the remaining demurrage in the district court action. Superior filed a counterclaim in the district court against Qin's for indemnification in the event it was required to reimburse APL for the remaining demurrage.

On April 2, 2004, the district court granted APL's motion for summary judgment on its cross-claim against Superior and on May 18, 2004, entered judgment against Superior in favor of APL in the amount of $29,990.00 plus pre-judgment interest. *Qin's, Inc. v. American President Lines, Ltd. and Superior Link International, Inc.*, No. 03:03 CV 193 (W.D.N.C.) (May 18, 2004) (Order). In addition, the court dismissed the claims brought by Qin's against Superior alleging fraud and breach of fiduciary duty. Superior's counterclaim seeking indemnification against Qin's for APL's judgment against Superior remained pending.

On July 29, 2004, Qin's commenced this matter with the Commission. Its complaint alleged that Superior failed to establish and observe just and reasonable regulations and practices relating to the receipt, handling, storing, or delivering the containers in violation of section 10(d)(1) of the Shipping Act of 1984. 46 U.S.C. § 41102(c). Qin's sought "damages in the sum of $23,626.40 which includes the monies paid to APL to negotiate the release of the two containers, attorney's fees and court costs as of April 28, 2004." (FMC Complaint).

-4-

On September 27, 2004, relying on the district court's dismissal of Qin's complaint against it, Superior filed with the Commission a motion to dismiss Qin's FMC complaint on the grounds of *res judicata*. On November 9, 2004, the administrative law judge then assigned to this case denied the motion to dismiss. He noted that while both actions involved the same transaction, the specific claim of violation of the Shipping Act had not been involved in the district court lawsuit. He held that limitations on the district court's jurisdiction to decide Shipping Act issues or to award reparations for violations of the Shipping Act constituted an exception to the doctrine of *res judicata*. On December 15, 2004, the district court took note of this order and stayed the civil action pending a decision by the Commission on Qin's FMC complaint.

Qin's and Superior filed cross-motions for summary judgment on the FMC complaint. The resolution of one question resolved the issue of liability for the demurrage: Did Qin's include a bill of lading in the Federal Express envelope when it sent its check for payment of the freight to Superior on February 4, 2003, as Qin's contended, or had Qin's failed to include the bill of lading with the check as Superior contended? Based on the facts as presented in the affidavits and other papers submitted by the parties, the administrative law judge found that Qin's had included the bill of lading with the check. On or before February 6, 2003 (the date the check cleared the bank), Qin's had fulfilled all of the obligations imposed on it to permit release of the containers to the consignee. Superior failed to secure the release of the containers before the end of free time. Therefore, Superior was liable for the demurrage and Qin's was entitled to reparations in the amount of $7,250.00, the portion of the demurrage Qin's paid APL to secure release of the containers.

-5-

Qin's filed the FMC Initial Decision and notice that the Commission would not review the Initial Decision with the district court. On September 5, 2006, the court issued an order allowing Superior fourteen days to respond. I take official notice of the fact that Superior did not respond to the district court's order when, and that the district court case (that is, Superior's counterclaim) has now been dismissed with prejudice. *Qin's, Inc. v. American President Lines, Ltd. and Superior Link International, Inc.*, No. 03:03 CV 193 (W.D.N.C.) (December 11, 2006) (Order).

## II. PETITION FOR ATTORNEY FEES.

On August 28, 2006, Qin's filed Complainant's Petition for Attorney Fees (Qin's Petition). Qin's Petition requests $36,207.98 in attorney fees and costs based on 211.35 hours Qin's claimed its attorneys spent on this matter "from its inception at the FMC." (Qin's Petition at 1). Qin's attached four exhibits to the Petition, including Exhibit B, a statement dated August 23, 2006, claimed to set forth its attorneys' services and charges from March 21, 2003, to August 22, 2006 (Interim Fee Statement). (*See* Qin's Petition at 2 ("On the enclosed time sheets 'PSH' represents Peter S. Herrick who has been admitted to practice since 1968. 'RL' represents Roy Leon, an associate with the law firm, Peter S. Herrick, P.A. Mr. Leon was admitted to practice in 2001."); Qin's Petition, Exhibit B). The Interim Fee Statement sets forth the date on which each service was rendered, identifies the attorney who rendered the service (Mr. Herrick or Mr. Leon, identified by Mr. Herrick's letterhead as being "of counsel," but also described by Mr. Herrick as "my employee and/or associate" (Qin's Response to the Order for Supplemental Briefing (Qin's Supplemental Brief), Exhibit A at ¶ 11)), a brief description of the service, the hours spent, and the charge for that service. The Interim Fee Statement totals the number of hours expended (211.35) and the total charge ($33,742.50). The Interim Fee Statement does not set forth

-6-

separate subtotals of the number of hours charged for each attorney, and Qin's Petition does not provide these subtotals. *See* 46 C.F.R. § 502.254(b) ("Petitions for attorney's fees under this section shall specify the number of hours claimed by each person representing the complainant at each identifiable stage of the proceeding.").

In its Petition, Qin's claims that reasonable hourly rates are $400.00 for Mr. Herrick and $250.00 for Mr. Leon. It argues that these hourly rates are justified by developments in the law on attorney fees in the District of Columbia that began in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). The updated Laffey Matrix, prepared by the United States Attorney's Office for the District of Columbia as evidence of prevailing market rates in the Washington, D.C., area, sets forth hourly rates for attorneys based on their years of experience. (*See* Qin's Petition, Exhibit D). Throughout the Interim Fee Statement, however, Mr. Herrick's time is billed at $250.00 per hour. Mr. Leon's time is billed at $200.00 per hour for the period prior to July 18, 2006, and $250.00 per hour after that date. Curiously, when the total charge of $33,742.50 is divided by the total number of hours claimed of 211.35, the average hourly rate is $159.65, well below the hourly rate claimed either for Mr. Herrick or Mr. Leon. Therefore, the hourly rates requested in the Petition seem to bear no relationship to the attorney fees sought.

On September 13, 2006, respondent Superior filed Respondent's Reply to Complainant's Petition for Attorney Fees (Superior Reply). First, Superior argues that the attorney fees and costs are wholly disproportionate to the reparations award of $7,250.00. Superior claims that the complaint sought a total or $23,626.40 in reparations and that the Commission only awarded 30% of that figure. Superior argues that given this disparity between the reparations sought by

the complaint and the reparations actually awarded, Qin's "reasonable attorneys' fees are zero."
(Superior Reply at 2). Second, Superior argues that attorney fees are limited to those services
"directly related to obtaining a reparations award," 46 C.F.R. § 502.254(a), and claims that many
of the entries on the Interim Fee Statement "have nothing to do with the claim before the Federal
Maritime Commission." (*Id.*). Superior attached a copy of the Interim Fee Statement on which
it "highlighted"[2] each service that it contends "is either not related to this action or that is
ambiguous and not identifiable with a stage of this proceeding." (*Id.* at 4). It argues that
awarding fees for those services would reduce the claim to $20,367.50. (*Id.*)

On September 21, 2006, Qin's filed Complainant's Response to Respondent's Reply to
Complainant's Petition for Attorney Fees (Qin's Response).[3] First, it argues that the reparation
award of $7,250.00 is not disproportionate to the reparations sought. The complaint sought a
payment of $7,250.00 in reparations for the demurrage Qin's paid to APL to secure release of the
containers. The balance of the $23,626.40 stated in the complaint is for attorney fees and costs.
(Qin's Response at 1). Second, Qin's Response states that the fee statement had been revised to
remove all entries prior to April 12, 2004, the date on which the attorneys undertook
representation of Qin's on the FMC claim, and other entries that were confusing as not reflecting
work on the FMC case. (Qin's Response at 3). Qin's attached two exhibits to the Response,
including Exhibit A, a revised statement dated September 8, 2006, claimed to set forth its
attorneys' services and charges from April 12, 2004, to September 15, 2006 (Revised Fee
Statement). (Qin's Response, Exhibit A). The Revised Fee Statement sets forth the same

---

[2] A number of the services are underlined on the copy Superior filed with the Commission.
I assume that this is what Superior means by "highlighted."

[3] On November 2, 2006, I granted the motion for leave to file this Response.

-8-

information for each service as the Interim Fee Statement and totals the number of hours

expended (140.05) and the total charge ($29,742.50). Relying again on the Laffey Matrix, Qin's

claims that reasonable hourly rates are $400.00 for Mr. Herrick and $250.00 for Mr. Leon. The

hourly rates on the Revised Fee Statement have been changed from the hourly rates on the

Interim Fee Statement to indicate that Mr. Herrick's time was billed at $400.00 per hour and Mr.

Leon's time was billed at $250.00 per hour, the rates at which Qin's Petition and Qin's Response

argue they should be compensated. The Revised Fee Statement again fails to set forth separate

subtotals of the number of hours charged for each attorney, and Qin's Response does not provide

these subtotals. The Revised Fee Statement has an inconsistency similar to the Interim Fee

Statement: When the total charge of $29,742.50 is divided by the total number of hours claimed

of 140.05, the average hourly rate is $212.37, well below the hourly rate claimed for either Mr.

Herrick or Mr. Leon. Again, the hourly rates requested seem to bear no relationship to the

attorney fees sought. Qin's Response also sets forth information regarding the attorneys'

experience that it argues support compensation at the requested hourly rates.

On reviewing the information and arguments regarding the attorney fees petition and

reviewing the case law, I determined that further briefing would be necessary. Accordingly, on

November 2, 2006, I issued an Order for Supplemental Briefing asking Qin's to set forth the

hourly rates at which it agreed to compensate Mr. Herrick and Mr. Leon when they undertook

their representation of Qin's on this case, including as an exhibit any written fee agreement

setting forth these rates. I also instructed Qin's to address the factors set forth by the court in

*Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995),

> including information about the rates that Mr. Herrick and Mr. Leon customarily
> charge; information about whether they customarily charge reduced rates
> reflecting non-economic, public-spirited goals; information about whether the

> rates they charged Qin's were reduced to reflect non-economic, public-spirited
> goals; and any information (in addition to that already submitted) about Mr.
> Herrick and Mr. Leon's skill, experience, and reputation (this may include the
> hourly rates at which any court or administrative agency has awarded attorney
> fees to Mr. Herrick and Mr. Leon).

*Qin's, Incorporated v. Superior Link International, Inc.*, FMC Docket No. 04-08 (Nov. 2, 2006)

(Order for Supplemental Briefing). I ordered that Qin's supplemental brief be filed on or before

November 17, 2006, and instructed Superior to file its reply on or before December 4, 2006.

On November 16, 2006, I received Qin's Supplemental Brief. Exhibit B attached to

Qin's Supplemental Brief is a retainer letter dated March 24, 2003, from Mr. Herrick to Qin's

stating that Mr. Herrick's time would be billed at $250.00 per hour. No hourly rate for Mr. Leon

is set forth in that letter. Attached to the letter is a Consent and Agreement signed by a

representative of Qin's retaining Mr. Herrick. Qin's suggests that I

> should take into consideration the fact that this was the initial fee agreement
> established forty-four months ago. . . . Undersigned counsel's office and Qin
> orally agreed to the increase in fees based on the hours devoted, the complexity of
> the matter, rising inflation costs and the length of time to achieve complete
> success before the FMC. Qin's has already paid the balance for all attorney fees
> due to [Mr. Herrick's] office.

(Qin's Supplemental Brief at 2-3). Qin's states that

> [a]t the inception of representing Qin [*sic*] in this matter, Herrick was charging
> $250.00 per hour and Leon $200 per hour. Since then the rates have been raised
> incrementally and Herrick is now charging $400.00 per hour and Leon $250.00
> per hour. Herrick and Leon do not customarily charge reduced rates reflecting
> non-economic, public spirited goals (except in pro bon cases) which is also
> applicable to representing Qin [*sic*]. Herrick has been awarded lump sum
> settlement fees in Freedom of Information Act cases but no hourly awards.

(Qin's Supplemental Brief at 5). Qin's attached a declaration by Mr. Herrick summarizing his

experience as a lawyer. In this declaration, Mr. Herrick states that he "reviewed and submitted"

the Revised Fee Statement reducing the hours from 211.35 to 140.05 and the attorney fees from

-10-

$36,207.89 to $29,742.50. He states that based on his legal background and years of experience, he began charging $400.00 per hour in 2004. He states that he employs Mr. Leon, who has been a member of the Florida Bar since 2001, and that his firm required that Mr. Leon charge $250.00 per hour. (Qin's Supplemental Brief, Exhibit A). Qin's Supplemental Brief does not discuss the Laffey Matrix on which its Petition and Response relied.

On December 4, 2006, Superior filed Respondent's Reply to Complainant's Response to Order for Supplemental Briefing (Superior Supplemental Brief). First, Superior reiterates its argument that the attorney fees requested by Qin's are disproportionate to the reparations award. Superior argues that the reparations award of $7,250.00 is only 30% of Qin's original claim and that this demonstrates lack of success, not complete success as claimed by Qin's, pointing out that even with the reduction from the initial Qin's Petition, the reduced attorney fees request is more than four times the reparations award. Superior asserts that Qin's "lack of success and its concession (by not appealing its award) that it was not justified in seeking reparations in the amount of $23,625.40, is grounds, under *Hensley v. Eckerhart*, 461 U.S. 424 (1983), to adjust downward any attorneys' fee award." (Superior Supplemental Brief at 2). Superior argues that this lack of success also demonstrates that it was reasonably justified in contesting the action. *Id.* Second, Superior argues that the hourly rates of $400.00 for Mr. Herrick and $250.00 for Mr. Leon claimed by Qin's are not justified, pointing out that there is no documentation demonstrating that Qin's actually was charged or paid these amounts. Third, Superior argues that not all of the "fat" has been eliminated from the itemized bill. (*Id.* at 3.) In its Supplemental

-11-

Brief, Superior fails to identify any particular items that it believes are not justified, but seems to rely on the copy of the Interim Fee Statement that it "highlighted" and attached to its Reply.[4]

## III. DISCUSSION.

A party who is awarded reparations under the Shipping Act may also receive "reasonable attorney fees." 46 U.S.C. § 41305(b). A complainant is a prevailing party if he "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas State Teachers Assoc. v. Garland Indep. School District*, 489 U.S. 782, 791-92 (1989).

Fees should be calculated using the lodestar analysis. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Transworld Shipping (USA), Inc. v. FMI Forwarding (San Francisco), Inc.*, 29 S.R.R. 876, 878 and n.3 (2002). The applicant for an award of attorney fees bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates. *See Blum v. Stenson*, 465 U.S. 889, 896 n.11 (1984) ("[C]ourts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates."); *Hensley v. Eckerhart*, 461 U.S. at 437 ("[T]he fee applicant bears the

---

[4] Qin's Petition asks for "36,207.89 in attorney fees and costs." Qin's Petition at 1. The Interim Fees Statement claims $33,742.50 in attorney fees, leaving a balance of $2,465.39, presumably for costs. Qin's did not submit any documentation regarding what these costs might be. Qin's Reply requested $29,742.50, the total fee claimed by the Revised Fee Statement, and did not identify any costs. Even if Qin's had documented costs, costs may not be awarded by the Commission under the Shipping Act. *Global Transporte Oceanico S.A. v. Coler Independent Lines Co.*, Docket No. 99-14, slip op. at 4 n.5 (November 9, 1999) (Award of Attorney's Fees).

burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.").

### A.   Qin's is Entitled to an Award of Attorney Fees.

Qin's is a prevailing party. Qin's filed a complaint seeking reparations in the amount of $7,250.00, the sum it paid to APL to secure release of the containers, plus attorney fees and costs to the date of filing. The Initial Decision awarded reparations in the amount of $7,250.00 to Qin's; therefore, it is a prevailing party as it has received the benefit it sought in bringing suit. *Texas State Teachers Assoc. v. Garland Indep. School District, supra.*

I address first Superior's contention that Qin's is not entitled to an award of attorney fees at all because the reparations award of $7,250.00 is minimal in comparison to the reparations sought by in the complaint ($23,626.40) and the attorney fees sought by Qin's Reply ($29,742.00). (Superior Supplemental Brief at 1-3; *see also* Superior Reply at 1-2). Superior's contention is wrong.

First, Superior mis-characterizes Qin's FMC complaint. The complaint avers that Qin's "paid APL the sum of $7,250.00 on July 29, 2004, against the outstanding demurrage balance of $29,990.00 [*sic*] that was owed to APL, to obtain the release of the goods to its customer." (Complaint at 4).[5] Qin's then describes its injury to be "damages in the sum of $23,626.40 which includes monies paid to APL to negotiate the release of the two containers, *attorney's fees and court costs as of April 28, 2004.*" (*Id.* at 5) (emphasis added). While Qin's complaint would have been clearer if the "damages" figure had not included the attorney's fees and costs, the Initial Decision awarded to Qin's as reparations the full amount sought by the complaint:

---

[5] The outstanding demurrage on that date before Qin's made its payment was $37,240.00. When Qin's made this payment, the *remaining balance* was $29,990.00.

-13-

$7,250.00. It is now before me for consideration of the rest of the claim for "reasonable attorney's fees and court costs" asked for in the complaint. Therefore, the reparations award is not "minimal."

Second, to the extent Superior's argument can be construed as an objection to the fact that the attorney's fees sought and the size of the reparations award, the argument is without merit. The Supreme Court has held that:

> [in] some circumstances, even a plaintiff who formally "prevails" under [42 U.S.C. § 1988] should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. . . . When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, . . . the only reasonable fee is usually no fee at all.

*Farrar v. Hobby*, 506 U.S. 103, 115 (1992). The reparations award in this case was not "nominal." Qin's sought and received as reparations the full amount it paid APL in order to secure release of the containers. The fact that the attorney fees expended to secure the reparations award exceed the award is not grounds for reducing the fees. *See* 2 Derfner and Wolf, *Court Awarded Attorney Fees* § 16.04[3] n.81 (2006 Rev.).

Accordingly, I find that Qin's was a prevailing party and is entitled to an award of reasonable attorney fees under 46 U.S.C. § 41305(b). Superior's arguments regarding specific services for which an award of attorney fees is sought are addressed in Section III.C. below.

### B.    Hourly Rate.

Determination of reasonable attorney fees by the lodestar analysis requires a finding of a reasonable hourly rate for the attorneys' time.

-14-

### 1.    Hourly Rate Charged.

One would think that it would be a simple matter to determine the hourly rate that was actually charged by an attorney and paid by a client. Qin's has submitted contradictory information, however, so my first task is to determine this rate based on the information in the record.

Qin's Petition asserts that Mr. Herrick "was billing at the rate of $400.00 per hour and [Mr. Leon] at the rate of $250.00." (Qin's Petition at 3). This assertion, however, is contradicted by the Interim Fee Statement dated August 23, 2006. (Qin's Petition, Exhibit B). The Interim Fee Statement indicates that all of Mr. Herrick's services were billed at an hourly rate of $250.00. For every service performed during the period from March 21, 2003, to July 17, 2005, Mr. Leon's services were billed at an hourly rate of $200.00. The first service for which Mr. Leon's time was billed at an hourly rate of $250.00 occurred on July 18, 2006, *after* issuance of the Initial Decision. (Qin's Petition, Exhibit B).

Whoever prepared[6] the Revised Fee Statement changed the hourly rate for each attorney. For example, on the Interim Fee Statement, the entry for April 12, 2004, indicates that Mr. Leon (RL) spent 0.50 hour analyzing FMC jurisdiction and researching the filing of the complaint, a service for which the law firm charged $100.00. On the Revised Fee Statement, the information is identical except the Statement indicates that the firm charged $125.00 for this service. On the Interim Fee Statement, the entry for June 25, 2004, states that Mr. Herrick (PSH) spent 1.00 hour

---

[6] In his declaration submitted with Qin's Supplemental Brief, Mr. Herrick states that he reviewed the Revised Fee Statement, (Qin's Supplemental Brief, Exhibit A at ¶ 9), but he does not identify who prepared it. The September 15, 2006, entry on the Revised Fee Statement indicates that he reviewed the time sheets and removed all ambiguous non FMC entries. (Qin's Response, Exhibit A)

revising the FMC complaint, a service for which the law firm charged $250.00. On the Revised Fee Statement, the information is identical except the Statement indicates that the firm charged $400.00 for this service. The entries on the Interim Fee Statement and the Revised Fee Statement are identical for each service between April 12, 2004, and July 17, 2005, except that on the Revised Fee Statement, the charges were calculated at the higher hourly rates.[7]

As noted above, my predecessor issued the Initial Decision on July 18, 2006. Beginning on that date with Mr. Leon's review of the Initial Decision, the Interim Fee Statement indicates that the attorneys billed his services at an hourly rate of $250.00. While the Interim Fee Statement indicates that Mr. Herrick spent some time on this case on July 18, 2006, and August 22, 2006, it does not indicate that the attorneys charged Qin's for this time. The last services indicated on the Interim Fee Statement occurred August 22, 2006. The Revised Fee Statement begins with services rendered on April 12, 2004, and ends with services rendered September 15, 2006. All charges from April 12, 2004, through September 15, 2006, were calculated at an hourly rate of $400.00 for Mr. Herrick and $250.00 for Mr. Leon.

The letter establishing the attorney-client relationship signed by Mr. Herrick to which a representative agreed established an hourly rate of $250.00 for Mr. Herrick. It does not set forth an hourly rate for Mr. Leon. This letter also establishes that "[s]tatements for time billed will be sent at the end of each month and are due and payable upon receipt and after the retainer is exhausted." (Qin's Supplemental Brief, Exhibit B). The brief states that Qin orally agreed to an

---

[7] It is noted that no charge is indicated on the Revised Fee Statement for three services for which charges are indicated on the Interim Fee Statement, one "PSH" service on September 9, 2004, and one "PSH" service and one "RL" service on December 20, 2004. It appears that these charges were removed because Qin's determined the services concerned the district court case, not the FMC case. (See Qin's Response at 3).

-16-

increase in fees (Qin's Supplemental Brief at 3) and in his declaration, Mr. Herrick states that he has "been charging $400.00 an hour beginning in 2004 based on [his] legal background and years of experience" (Qin's Supplemental Brief, Exhibit A at ¶ 10) and his firm "required that Roy Leon . . ., my employee and/or associate, charge $250.00 an hour," (*id.* at ¶ 11).

The Interim Fee Statement prepared on August 23, 2006, does not support Qin's contention and Mr. Herrick's declaration that the attorneys charged and Qin's paid $400.00 per hour for Mr. Herrick's services and $250.00 per hour for Mr. Leon's services for the period from April 12, 2004, to July 17, 2006. For this to be true, the "billing invoice" (Qin's Petition at 1) sent to Qin's would have been different from the fee statement maintained by the attorneys' office. Nothing in the record suggests that this occurred.

Therefore, based on the information submitted in support of Qin's request for attorney fees, I find that the hourly rates actually charged by the attorneys for their services representing Qin's in this matter for the period April 12, 2004, to July 17, 2006, were $250.00 per hour for Mr. Herrick and $200.00 per hour for Mr. Leon, and for the period July 18, 2006, to September 15, 2006, $400.00 per hour for Mr. Herrick and $250.00 per hour for Mr. Leon.

### 2.    Hourly Rate Requested.

Qin's has requested that its attorneys be compensated for their services at hourly rates of $400.00 for Mr. Herrick and $250.00 for Mr. Leon. As noted *supra*, p.7, Qin's relies heavily on the Laffey Matrix as support for these rates in its Petition and Reply. In its Supplemental Brief, it relies on is claim that its attorneys' hourly rates were increased from the initial fee agreement by the time the attorneys began to represent them on the FMC claim.

> One can begin with the premise that, in the ordinary case, a fee based on the actual rates an attorney charges would be prima facie reasonable. There is no better indication of what the market will bear than what the lawyer in fact charges

-17-

> for his services and what his clients pay. In an efficient market, a "reasonable"
> rate set by the court should mirror the attorney's actual rate because no attorney
> will charge less than that rate if he can get it and no client will pay more. The
> "Laffey" matrix was derived, after all, from a survey of data of the rates lawyers
> actually charged their clients. Thus, if the market is working correctly and the
> "Laffey" rates are accurate, lawyers should be getting the "Laffey" rates from
> their clients.

*Griffin v. Washington Convention Center*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001). *See also*

*Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) ("[a]n attorney's

usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. at 895-896 n.11)).

As the case law makes clear, an award of attorney fees is not necessarily limited to the

hourly rate that a party agreed to pay its attorney.

> In [42 U.S.C. § 1988] attorneys' fee cases, attorneys who customarily charge
> reduced fees reflecting non-economic, public-spirited goals may seek fees based
> on the prevailing market rates if the prevailing party demonstrates the
> reasonableness of the requested hourly rates. That burden entails the following:
> first, if the attorney customarily charges clients lower rates than plaintiff has
> requested under section 1988, the attorney must demonstrate that the customarily
> reduced rates are charged for non-economic reasons; second, the attorney must
> offer information documenting his or her skill, experience, and reputation; and
> third, the attorney must produce evidence of the prevailing market rates in the
> relevant community for attorneys of comparable skill, experience, and reputation.

*Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995). As noted *supra*, p.9, I

asked Qin's to address these factors in its Supplemental Brief. Qin's stated that the fees that its

attorneys charged were not reduced for non-economic reasons. The only evidence regarding

prevailing market rates consists of the Laffey Matrix and a magazine article describing attorney

fees in the Miami area. (Qin's Reply, Exhibit B). Neither Qin's nor Superior submitted any

information regarding prevailing market rates for representation on Shipping Act matters.

I found above that the hourly rates actually charged by the attorneys for their services representing Qin's in this matter for the period April 12, 2004, to July 17, 2006, were $250.00 per hour for Mr. Herrick and $200.00 per hour for Mr. Leon. See Section III.B.1. I find that Qin's has not met its burden of demonstrating that these hourly rates should be increased. First, this was a relatively simple case. Its resolution turned on the answer to one question: Did Qin's include the bill of lading in the Federal Express envelope when it sent its check for the ocean freight charges? Second, the hourly rates the attorneys normally charge were not reduced for non-economic reasons. Third, regarding Qin's suggestion that I "should take into consideration the fact that this was the initial fee agreement established forty-four months ago," although authority exists to permit use of current market rates to determine an attorney fee award rather than the market rate in effect at the time the services were rendered when there has been a delay between the rendering of services and the payment of fees, *see* 2 Derfner and Wolf, *Court Awarded Attorney Fees* § 16.04[5], in this case, the fee agreement required Qin's to pay its fees monthly (*see* Qin's Supplemental Brief, Exhibit B). Nothing in the record suggests Qin's did not make these payments as required. (*See* Qin's Supplemental Brief at 3 ("Qin has already paid the balance for all attorney fees due")). Fourth, nothing in the record establishes that the market rate for representation on Shipping Act matters is higher or lower than the hourly rates set forth in the Interim Fee Statement. Furthermore, Superior has not suggested that the hourly rates established by the agreement of Qin's and its attorneys and paid by Qin's for this period are unreasonably high. Therefore, I find that for the period April 12, 2004, through July 17, 2006, Mr. Herrick's reasonable hourly rate was $250.00 and Mr. Leon's reasonable hourly rate was $200.00.

The Revised Billing Statement indicates that after the issuance of the Initial Decision, Mr. Herrick increased his hourly rate to $400.00 and Mr. Leon increased his hourly rate to $250.00.

While this indicates that these became the hourly rates actually charged, I find that it is not reasonable to permit a party to increase the hourly rate when the only services to be provided involve the preparation of the petition for attorney fees and other "house-keeping" matters such as notifying the district court of the Initial Decision and the Commission's decision not to review the Initial Decision. Therefore, I find that the reasonable hourly rates for services performed after the Initial Decision are $250.00 for Mr. Herrick and $200.00 for Mr. Leon.

### C.  Hours Reasonably Expended.

When Qin's submitted its petition for attorney fees, it attached the Interim Fee Statement setting forth the services for which it sought an award and the charge for each of those services. Superior attached to its Reply a copy of the Interim Fee Statement on which its counsel "highlighted each entry that is either clearly not related to this action or that is ambiguous and not identifiable with a stage of this proceeding." (Superior Reply at 4; Superior Reply, Exhibit I). Superior objected to most of the services rendered prior to April 12, 2004, and many of the services rendered after April 12, 2004. When Qin's submitted its Response to Superior's Reply, it attached the Revised Fee Statement (Qin's Response, Exhibit B) setting forth the services for which it seeks reasonable attorney fees.

As noted above, for both the Interim Fee Statement and the Revised Fee Statement, when the total charges are divided by the total number of hours claimed, the average hourly rate is below the hourly rate that Qin's requests for its attorneys. This is explained by the fact that the statements included in the "hours" total services for which the statements do not reflect a charge. (*See, e.g.*, Qin's Petition, Exhibit B, 7/26/04 (PSH entry - "Complete complaint and fedex to FMC," 0.20 hours, no charge indicated; RL entry - "Discussions with the Office of the Secretary and Docket Clerk to confirm filing requirements for complaint. Prepare copies of complaint and

-20-

exhibits. Travel time to Fed Ex Drop off," 1.00 hours, no charge indicated); Qin's Response, Exhibit A (identical entries with no charge indicated)). Qin's states in its Response that when it prepared the Revised Fee Statement, "[w]here the entries are confusing as not reflecting work on the FMC case no time has been billed." (Qin's Response at 3).

I conclude, therefore, that Qin's is seeking attorney fees for each service for which a charge is reflected on the Revised Fee Statement, and is not making a claim for attorney fees for those services for which no charge is indicated. Appendix 1 includes each service for which Qin's indicated an attorney fee is sought on the Revised Fee Statement. The information in the "Date," "Services Rendered," "Attorney Hours," and "Attorney Fees Sought" columns on Appendix 1 is extracted from the Revised Fee Statement. The services that are underlined are those to which Superior noted an objection by "highlighting" a service. (See Superior Reply, Exhibit 1). I have indicated the number of hours for each claimed service that I find to be reasonable in the two "Hours Awarded" columns, and the attorney fee, if any, that I award for that service in the two "Attorney Fees Awarded" columns. I find for each service for which I made an award at the hourly rates of $250.00 for Mr. Herrick and $200.00 for Mr. Leon, Qin's has met its burden of demonstrating that the service was reasonably related to this case.

For each of the following services for which no fee was awarded, a fee was awarded, but I reduced the hours, or a fee was awarded despite Superior's objection to the award, my reasons for the award are set forth below.

| 4/28/04 | Review client's time sheets and costs breakdowns. Complete rough draft FMC complaint. | RL 0.50 hr | Awarded $100.00 |
|---------|---------------------------------------------------------------------------------------|------------|-----------------|

Superior objected to an award for "review client's time sheets and costs breakdowns." While it is not clear whether the time sheets to which the indicated service refers are related to work by

employees of Qin's related to the shipment of the containers or the attorneys' time sheets for their representation of Qin's, I find in either situation, the fee for this service is reasonably related to the FMC proceeding.

| 8/17/04 | Review motion for summary judgment. | PSH 0.20 hr | Awarded $0.00 |
|---------|-------------------------------------|-------------|---------------|

Superior objected to an award for this service, but did not state a particular reason. The only motion for summary judgment pending at this point was in the district court case. This work was not reasonably related to the FMC proceeding. Therefore, no fee is awarded.

| 9/2/04 | Advise client on status of matters. | PSH 0.20 hr | Awarded $50.00 |
|--------|-------------------------------------|-------------|----------------|

Superior objected to an award for this service, but did not state a particular reason. I find that it is reasonably related to the FMC proceeding.

| 10/11/04 | Review status of cases with client | PSH 0.10 hr | awarded $25.00 |
|----------|------------------------------------|-------------|----------------|

Superior objected to an award for this service, but did not state a particular reason. I find that it is reasonably related to the FMC proceeding.

| 11/11/04 | Prepare letter to judge with FMC decision. | PSH 0.70 hr | awarded $175.00 |
|---|---|---|---|

Superior objected to an award for this service, but did not state a particular reason. In its Response, Superior cited Commission Rule 254 for the proposition that attorney fees are limited to those services "directly related to obtaining a reparations award. 46 C.F.R. § 502.254(a)." (Superior Reply at 2). While Superior quoted this rule correctly, it did not quote the rule completely. Commission Rule 254 continues to state that the award "may include compensation for services rendered the complainant *in a related proceeding in Federal court that is useful and necessary to the determination of a reparations award in the complaint proceeding." Id.* (emphasis added). I find that notifying the judge in the related district court proceeding is reasonably related, useful, and necessary to the FMC proceeding.

| 4/8/05 | Discussions with Ron Murphy to schedule follow-up discussions with PSH. | RL 0.10 hr | awarded $20.00 |
|---|---|---|---|

Superior objected to an award for this service, but did not state a particular reason. Ron Murphy is the head of the FMC Office of Consumer Affairs and Dispute Resolution Services, the office that conducted the mediation of this case. I find that it is reasonably related to the FMC proceeding.

| 4/25/05 | Receive and review deposition fees.  Fax to client for fees. | RL 0.10 hr | awarded $20.00 |
|---|---|---|---|

Superior objected to an award for this service, but did not state a particular reason. I find that it is reasonably related to the FMC proceeding.

| 4/27/05 | Discussions with client on upcoming mediation conference. | RL 0.10 hr | awarded $20.00 |

Superior objected to an award for this service, but did not state a particular reason. I find that it is reasonably related to the FMC proceeding.

| 5/31/05 | Review respondent's interrogatory responses for cases cited. Download appropriate cases of psh. Travel time to drop off PSH at Miami International Airport for tomorrow's mediation. | RL 1.50 hr | awarded $150.00 |

Mr. Leon acted as a taxi driver on the service of "[t]ravel time to drop off PSH at Miami International Airport for tomorrow's mediation." This is not properly compensated as an attorney service. A search for directions on Google maps (http://www.google.com/maps (visited January 8, 2007)) indicates the distance from the attorneys' office at 3520 Crystal View Ct., Miami, FL 33133-4025, to Miami International Airport is 9.5 miles and driving time alone is thirteen minutes. The same search on MapQuest (http://www.mapquest.com/directions/ (visited January 8, 2007)) indicates the distance is 10.25 miles and driving time alone is sixteen minutes. Therefore, I deducted 0.75 hour from the time claimed on the Revised Fee Statement for a round trip to the airport and awarded $150.00 for the 0.75 hour remaining.

| 6/1/05 | Multiple discussions with PSH during mediation conference in Long Beach. Review client file for pending issues. Discussions with APL attorney on lawsuit and settlement issues with Hartford insurance. | RL 0.50 hr | awarded $100.00 |

Superior objected to an award for the discussions with the APL attorney and the representative of Hartford insurance, but did not state a particular reason. In its Response, it cited Commission

-24-

Rule 254 for the proposition that attorneys' fees are limited to those "directly related to obtaining a reparations award. 46 C.F.R. § 502.254(a)." (Superior Reply at 2). While Superior quoted this rule correctly, it did not quote the rule completely. Commission Rule 254 continues to state that the award "may include compensation for services rendered the complainant *in a related proceeding in Federal court that is useful and necessary to the determination of a reparations award in the complaint proceeding. Id.* (emphasis added). I find that the discussions with the APL attorney and the representative of Hartford insurance are reasonably related, useful, and necessary to the FMC proceeding.

| 7/28/05 | Discussions with Judge Krantz's Office and the Office of the Secretary for copy requirements and filing requirements for motion for summary judgment. Prepare and sort copies of motion. Travel time to purchase shipping box. Travel time to Fed Ex and Post Office. | RL 4.00 hr | awarded $600.00 |
|---------|---|---|---|

Superior objected to an award for travel time to purchase shipping box and travel time to Fed Ex and Post Office, but did not state a particular reason. Travel time to purchase a shipping box and to go to a Fed Ex and Post Office is not properly compensated as an attorney service. Unlike the travel time to Miami International Airport, I do not have a means to calculate this time. Mindful that the burden is on Qin's to establish the appropriate hours, I have deducted one hour from the time claimed on the Revised Fee Statement for this group of services and awarded $600.00 for the three hours remaining.

-25-

| 7/29/05 | Track and confirm delivery of motion for summary judgment at the FMC.  Calculate printing and shipping costs. | RL 0.25 hr | awarded $50.00 |

Superior objected to an award for this service, but did not state a particular reason.  Given the

potential repercussions if a motion is not served and filed as required, it is not unreasonable to

award attorney fees for the brief time it takes to confirm delivery.

| 9/6/05 | Receive and review hard copies of Respondent's opposition and statement of facts.  Scan and email to client. | RL 0.25 hr | awarded $50.00 |

Superior objected to an award for scanning and emailing to the client, but did not state a

particular reason.  Given that an attorney has an obligation to keep his client informed about the

progress of the case, this service is reasonably related to this matter.

| 10/6/05 | Review FMC rules for copies.  Prepare copies of opposition to motion for summary judgment and undisputed facts.  Prepare and mail courtesy copy to FMC judge and opposing counsel.  Travel time to fed ex. | RL 1.00 hr | awarded $100.00 |

Superior objected to an award for travel time to Federal Express, but did not state a particular

reason.  Travel time to go to a Federal Express office and a Post Office is not properly

compensated as an attorney service.  Unlike the travel time to Miami International Airport, I do

not have a means to calculate this time.  Mindful that the burden is on Qin's to establish the

appropriate hours, I have deducted one-half hour from the time claimed for this group of services

and awarded $100.00 for the one-half hour remaining.

| 10/7/05 | Track and confirm delivery of Complaint's Opposition to Respondent's Summary Judgment by FED.Com. Save and scan receipt in client's file. | RL 0.10 hr | awarded $20.00 |

Superior objected to an award for these services, but did not state a particular reason. Given the potential repercussions if a motion is not served and filed as required, it is not unreasonable to award attorney fees for the brief time it takes to confirm delivery. Given that an attorney has an obligation to keep his client informed about the progress of the case, this service is reasonably related to this matter.

| 7/18/06 | Receive and review initial decision from FMC. Research rules for attorney fees. Research case law on FMC attorney Fees. Review client file on notifying Western District Court. Preparing petition for attorney fees. | RL 2.00 hr | awarded $400.00 |

Superior objected to an award for reviewing the client file on notifying Western District Court, but did not state a particular reason. In its Response, it cited Commission Rule 254 for the proposition that attorneys' fees are limited to those "directly related to obtaining a reparations award. 46 C.F.R. § 502.254(a)." (Superior Reply at 2). While Superior quoted this rule correctly, it did not quote the rule completely. Commission Rule 254 continues to state that the award "may include compensation for services rendered the complainant *in a related proceeding in Federal court that is useful and necessary to the determination of a reparations award in the complaint proceeding. Id.* (emphasis added). I find that notifying the district court of Initial Decision in this case is reasonably related, useful, and necessary to the FMC proceeding.

| 8/18/06 | Review appeal timeline with phs. | RL 0.10 hr | awarded $20.00 |
|---------|-----------------------------------|------------|----------------|

Superior objected to an award for these services, but did not state a particular reason. Reviewing the time limits for appeal imposed by Commission regulations is reasonably related to this matter.

## IV. CONCLUSION.

Based on the foregoing and as set forth in Appendix 1, I find that Qin's should receive an award of attorney fees for 33.75 hours of Mr. Herrick's services at an hourly rate of $250.00, a total of $8,437.50, and for 62.40 hours of Mr. Leon's services at an hourly rate of $200.00, a total of $12,480.00. Therefore, Superior Link International, Inc., shall pay complainant Qin's, Incorporated, $20,917.50 in attorney fees.

## ORDER

Upon consideration of Complainant's Petition for Attorney Fees and respondent's opposition thereto, it is hereby

**ORDERED** that respondent Superior Link International, Inc., pay complainant Qin's, Incorporated, $20,917.50 in attorney fees. This payment shall be made within fifteen days of the date this decision becomes final. 46 C.F.R. §§ 502.227 and 502.254.

*Clay D. Guthridge*

Clay G. Guthridge
Administrative Law Judge

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04–08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 4/12/04 | Analyze FMC jurisdiction and research filing complaint. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 4/14/04 | Research FMC law and case law for upcoming filings. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 4/14/04 | Review FMC webpage for filing complaint and Shipping Act with PSH. | 0.40 | | $100.00 | | 0.40 | | $80.00 | |
| 4/15/04 | Review FMC cases for potential administrative hearing and complaint. | 0.30 | | $75.00 | | 0.30 | | $60.00 | |
| 4/19/04 | Research federal regulations and FMC complaint. filing formal complaints. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 4/20/04 | Discussions with the FMC's Office of the Secretary on filing formal complaints. | 0.20 | | $50.00 | | 0.20 | | $40.00 | |
| 4/27/04 | Receive and review FMC complaint packet. Preparing formal complaint. | 2.50 | | $625.00 | | 2.50 | | $500.00 | |
| 4/28/04 | Review client's time sheets and costs breakdowns. Complete rough draft FMC complaint. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 5/5/04 | Amend complaint. Review FMC and federal regulations for attorney admissions. | 1.25 | | $312.50 | | 0.50 | | $100.00 | |
| 5/6/04 | Amend FMC complaint. Prepare exhibits. | 1.50 | | $375.00 | | 1.50 | | $300.00 | |
| 6/25/04 | Revising FMC complaint. | | 1.00 | | $400.00 | | 1.00 | | $250.00 |
| 6/25/04 | Amending FMC complaint. Preparing exhibits. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 6/28/04 | Continue preparing FMC complaint. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 6/29/04 | Complete rough draft complaint with exhibits. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 7/8/04 | Complete FMC complaint. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 7/8/04 | Complete FMC complaint. | | 1.00 | | $400.00 | | 1.00 | | $250.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04–08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 8/2/04 | Receive and review voice message from FMC. Inform PSH. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 8/4/04 | Discussions with FMC on sufficiency of complaint and service of process. | | 0.25 | | $100.00 | | 0.25 | | $62.50 |
| 8/17/04 | Review motion for summary judgment. | | 0.20 | | $80.00 | | 0.00 | | $0.00 |
| 9/2/04 | Advise client on status of matters. | | 0.20 | | $80.00 | | 0.20 | | $50.00 |
| 10/11/04 | Review status of cases with client. | | 0.10 | | $40.00 | | 0.10 | | $25.00 |
| 10/18/04 | Analyze superior's motion to dismiss fmc complaint; review file; research; prepare opposition to motion. | | 2.00 | | $800.00 | | 2.00 | | $500.00 |
| 10/19/04 | Continued research and analysis of FMC motion to dismiss and research; continued preparation of opposition. | | 2.00 | | $800.00 | | 2.00 | | $500.00 |
| 10/20/04 | Complete research and preparation of opposition to motion to dismiss and file with FMC. | | 4.00 | | $1,600.00 | | 4.00 | | $1,000.00 |
| 11/11/04 | Prepare letter to Judge with FMC decision. | | | | | | | | |
| 11/22/04 | Receive and review procedural clarification from Judge Kline. Review FMC administrative case law. Review scheduling request. | | 0.70 | | $280.00 | | 0.70 | | $175.00 |
| 11/23/04 | Review procedural order with PSH for proposed discovery order. Review FMC case analysis with psh. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 11/24/04 | Discussions with opposing counsel to check on status of proposed discovery order. Refax to opposing counsel. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 11/29/04 | Discussions with opposing counsel on discovery schedule and revise schedule for FMC. | 0.20 | 0.50 | $50.00 | $200.00 | 0.20 | 0.50 | $40.00 | $125.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.* Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 - Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 11/29/04 | Discussions with Ted Frank on joint discovery schedule. Fax to Ted Frank. Receive and review approval signatures. Prepare fax cover sheet and fax to FMC judge. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 11/30/04 | Receive approved order from FMC. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 12/7/04 | Review client file. Preparing discovery requests for FMC case. | | | | | | | | |
| 12/8/04 | Review client's files and complete rough draft interrogatories and request for production. Discussions with client on case status. | 2.00 | | $500.00 | | 2.00 | | $400.00 | |
| 12/9/04 | Review client's files and prepare rough draft requests for admissions. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 12/10/04 | Complete rough draft discovery requests. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 12/14/04 | Amend and correct discovery requests. Fax and mail to opposing counsel. Fax copies to client. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 1/5/05 | Review interrogatory response time frame with psh. Discussions with client on administrative procedure. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 1/6/05 | Review latest procedural order for time deadlines. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 1/7/05 | Review the lack of interrogatories directed to complainant with PSH and time deadline for respondent's response for discovery responses. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 1/10/05 | Discussed extension with Superior counsel. | | 0.10 | | $40.00 | | 0.10 | | $25.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 1/21/05 | Review client file on discovery response time deadline. Review matter with psh. Prepare and fax status to respondent. Receive and review extension request from respondent. Review request with psh. Prepare and fax approval letter with conditions to respondent. Fax copies to client. Scan all copies. | | | | | | | | |
| 1/24/05 | Receive and review discovery response from respondents. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 1/26/05 | Review discovery responses with psh. Scan and email copies to client. Discussions with client. Prepare and fax letter to opposing attorney for deposition dates. | 2.00 | | $500.00 | | 2.00 | | $400.00 | |
| 1/26/05 | Begin preparation of motion for summary judgment. | 1.50 | 0.50 | $375.00 | $200.00 | 1.50 | 0.50 | $300.00 | $125.00 |
| 2/1/05 | Prepare and fax deposition date letter to Chang. Receive and review reply. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 2/7/05 | Receive and review discovery requests from Superior. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 2/11/05 | Review interrogatories and requests for production along with client file. Remail discovery requests to client. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 2/14/05 | Receive, review and respond email questions from client. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 2/16/05 | Receive and review letter from Frank on possible deposition locations and time frame. Email client. Discussions with client. Prepare and fax confirmation letter to Frank on Los Angeles site and possible dates. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |

Qin's Inc. v. Superior Link Int'l, Inc.. Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 2/17/05 | Discussions with client and opposing attorney on appropriate deposition dates. Preparing discovery responses. Prepare and fax deposition notice letter to client. | 3.00 | | $750.00 | | 3.00 | | $600.00 | |
| 2/25/05 | Preparing clients for deposition; research; review file; prepare deposition questions and documents. | 3.00 | | $750.00 | | 3.00 | | $600.00 | |
| 2/25/05 | Email client information regarding depositions. Review client file with psh in preparation of upcoming depositions. | | 2.00 | | $800.00 | | 2.00 | | $500.00 |
| 2/28/05 | Attend deposition of Lisa Wong and Marcia Chin. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 3/3/05 | Discussions with client on interrogatory responses. Receive and review fax from client with answers. | | 3.00 | | $1,200.00 | | 3.00 | | $750.00 |
| 3/4/05 | Receive and review copies from client by Fed Ex. Review interrogatory time frame with psh. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 3/8/05 | Complete rough draft discovery responses. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 3/9/05 | Amend and complete discovery responses. | 2.00 | | $500.00 | | 2.00 | | $400.00 | |
| 3/10/05 | Complete mail and fax discovery responses to opposing counsel. Discussions with FMC on status deadline. Receive and review new procedural orders. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 3/14/05 | Receive and review deposition materials from Court Reporter. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 3/22/05 | Discussions with Judge to set mediation & email opposing counsel. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 3/25/05 | Review judge's referral to ADR. | | 0.10 | | $40.00 | | 0.10 | | $25.00 |

Qin's Inc. v. Superior Link Int'l, Inc., Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 4/8/05 | Discussions with Ron Murphy to schedule follow-up discussions with PSH. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 4/25/05 | Receive and review deposition fees. Fax to client for fees. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 4/27/05 | Discussions with client on upcoming mediation conference. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 5/2/05 | Discussions with mediator for June 1 date; and email client and attorney. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 5/2/05 | Discussions with FMC mediator's office. Review with psh. | | 0.20 | | $80.00 | | 0.20 | | $50.00 |
| 5/24/05 | Receive and review email from FMC Mediator. Prepare case summary for mediator. Preparing PSH file for next week's mediation. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 5/25/05 | Review client files and prepare copies for psh file for upcoming mediation hearing. | 1.50 | | $375.00 | | 1.50 | | $300.00 | |
| 5/26/05 | Review factual summary with psh. Amend and email to FMC mediator. Email copy to client. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 5/31/05 | Prepare for mediation. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 5/31/05 | Review respondent's interrogatory responses for cases cited. Download appropriate cases of psh. Travel time to drop off PSH at Miami International Airport for tomorrow's mediation. | | 1.00 | | $400.00 | | 1.00 | | $250.00 |
| 6/1/05 | Mediation in Long Beach with FMC. | 1.50 | 2.50 | $375.00 | $1,000.00 | 0.75 | 2.50 | $150.00 | $625.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 - Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours — Revised Fee Statement | | Attorney Fees Sought — Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 6/1/05 | Multiple discussions with PSH during mediation conference in Long Beach. Review client file for pending issues. Discussions with APL attorney on lawsuit and settlement issues with Hartford insurance. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 6/9/05 | Receive and review new procedural orders from FMC. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 6/16/05 | Letter to opposing counsel for file and to go to trial. | | 0.20 | | $80.00 | | 0.20 | | $50.00 |
| 6/16/05 | Receive and review correspondence from client. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 6/17/05 | Fax correspondence to Chang and client. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 6/20/05 | Letter to Superior counsel to make response to judge's order. | 0.20 | | $50.00 | | 0.20 | | $40.00 | |
| 6/26/05 | Attorney Frank called to say file being mailed. | | 0.10 | | $40.00 | | 0.10 | | $25.00 |
| 7/1/05 | Review fmc website for new judge fax machine. Fax documents to FMC Judge. | 0.20 | | $50.00 | | 0.20 | | $40.00 | |
| 7/20/05 | Review respondent's discovery materials and responses. Review client's files. Preparing documents for summary judgment. | 2.00 | | $500.00 | | 2.00 | | $400.00 | |
| 7/21/05 | Preparing rough draft motion for summary judgment. Research federal and FMC rules of procedure. Review federal reference files. | 4.00 | | $1,000.00 | | 4.00 | | $800.00 | |
| 7/26/05 | Preparing motion for summary judgment and exhibits. | 3.00 | | $750.00 | | 3.00 | | $600.00 | |
| 7/27/05 | Bill of lading research; make additional changes to summary judgment motion. | | 2.00 | | $800.00 | | 2.00 | | $500.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 7/27/05 | Amend motion for summary judgment with new items. Prepare new list of exhibits. | | | | | | | | |
| 7/28/05 | Discussions with Judge Krantz's Office and the Office of the Secretary for copy requirements and filing requirements for motion for summary judgment. Prepare and sort copies of motion. Travel time to Fed Ex and purchase shipping box. Travel time to Fed Ex and Post Office. | 1.50 | | $375.00 | | 1.50 | | $300.00 | |
| 7/29/05 | Track and confirm delivery of motion for summary judgment at the FMC. Calculate printing and shipping costs. | 4.00 | | $1,000.00 | | 3.00 | | $600.00 | |
| 8/3/05 | Receive and review notice of extension from FMC. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 9/1/05 | Fax copy to client. Review Superior Link's opposition to Qin's motion for summary judgment. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 9/6/05 | Receive and review hard copies of Respondent's opposition and statement of facts. Scan and email to client. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 9/7/05 | Discussions with client and review client email on Superior filing. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 9/16/05 | Receive and review latest motion from respondent. Review with psh. | | 0.25 | | $100.00 | | 0.25 | | $62.50 |
| 9/19/05 | Receive respondent's motion for summary judgment (hard copy by fed ex.) Email copy to client. | 0.50 | | $125.00 | | 0.50 | | $100.00 | |
| 10/4/05 | Preparing opposition to Superior motion for summary judgment. | 0.25 | 1.00 | $62.50 | | 0.25 | 1.00 | $50.00 | $250.00 |
| | | | | | $400.00 | | | | $250.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04–08

MEMORANDUM AND ORDER ON ATTORNEY FEES

APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 10/5/05 | Continued preparation of opposition to Superiors motion. | | | | | | | | |
| 10/6/05 | Review FMC rules for copies. Prepare copies of opposition to motion for summary judgment and undisputed facts. Prepare and mail courtesy copy to FMC judge and opposing counsel. Travel time to fed ex. | 1.00 | | $250.00 | $400.00 | | 1.00 | | $250.00 |
| 10/5/05 | Complete and file with the FMC Qin's opposition to motion for summary judgment and disputed facts. | 1.00 | | $250.00 | | | 0.50 | | $100.00 |
| 10/7/05 | Track and confirm delivery of Complaint's Opposition to Respondent's Summary Judgment by FED.Com. Save and scan receipt in client's file. | | 3.00 | | $1,200.00 | | 3.00 | | $750.00 |
| 11/2/05 | Receive and review email from Judge Krantz on possible pre trail hearings. Left voice message for PSH absence. Receive and review voice message from Judge Krantz and forwarded email. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 7/18/06 | Receive and review initial decision from FMC. Research and review rules for attorney fees. Research case law on FMC attorney Fees. Review client file on notifying Western District Court. Preparing petition for attorney fees. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 7/20/06 | Preparing petition for attorney fees. Research FMC decisions. | 2.00 | | $500.00 | | 2.00 | | $400.00 | |
| 8/18/06 | Review appeal timeline with phs. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 8/18/06 | Review appeal timeline with phs. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 8/24/06 | Prepare rough draft FMC Attorney fee application and exhibits. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |

*Qin's Inc. v. Superior Link Int'l, Inc.*, Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
|---|---|---|---|---|---|---|---|---|---|
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
| 8/28/06 | Discussions with the Office of the Secretary on filing application for attorney fees. Prepare copies. Receive and review email from Judge's office. Email copy to ALJ. Travel time to purchase shipping box and federal express. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 8/29/06 | Receive additional email from the Office of the Secretary. Confirm with psh of email and fed ex delivery. | | | | | | | | |
| 8/30/06 | Receive and review electronic confirmation receipt from Western District of North Carolina. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 8/31/06 | Track and confirm petition for attorney fees by federal express. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 9/6/06 | Review payment period with psh. Locate Superior's attorney's email. | 0.10 | | $25.00 | | 0.10 | | $20.00 | |
| 9/6/06 | Advise Superior attorney of Qin address. | 0.20 | | $50.00 | | 0.20 | | $40.00 | |
| 9/7/06 | Review lack of reparation payment with psh. Review original fma and Hartford claims in files. Prepare rough draft claim on bond for Hartford. | | 0.10 | | $40.00 | | 0.10 | | $25.00 |
| 9/8/06 | Fax claim on surety to Hartford, defendant's counsel and client. Mail to surety. | 1.00 | | $250.00 | | 1.00 | | $200.00 | |
| 9/13/06 | Analyze Superior's opposition to attorney fees. | 0.25 | | $62.50 | | 0.25 | | $50.00 | |
| 9/14/06 | Research Lexis for reported cases wherein Peter S Herrick was the attorney of record. | | 0.75 | | $300.00 | | 0.75 | | $187.50 |
| 9/15/06 | Review time sheets and remove all ambiguous non FMC entries. | | 0.75 | | $300.00 | | 0.75 | | $187.50 |
| | | | | | $400.00 | | 1.00 | | $250.00 |

*Qin's Inc. v. Superior Link Int'l, Inc.,* Docket No. 04-08
MEMORANDUM AND ORDER ON ATTORNEY FEES
APPENDIX 1 – Services for Which Attorney Fees Requested and Awarded

| Date | Services Rendered | Atty hours Revised Fee Statement | | Attorney Fees Sought Revised Fee Statement | | Hours Awarded | | Attorney Fees Awarded | |
| | | RL | PSH | RL $250/hr | PSH $400/hr | RL | PSH | RL $200/hr | PSH $250/hr |
|---|---|---|---|---|---|---|---|---|---|
| 9/15/06 | Research case law on payment of attorney fees. | | 1.00 | | $400.00 | | 1.00 | | $250.00 |
| 9/15/06 | Continued preparation of responses to objections to petition for attorney fees. | 1.00 | | | $400.00 | | 1.00 | | $250.00 |
| | TOTALS: | 64.65 | 33.95 | $16,162.50 | $13,580.00 | 62.40 | 33.75 | $12,480.00 | $8,437.50 |

TOTAL FEE AWARDED – PSH                 $8,437.50
TOTAL FEE AWARDED – RL                   $12,480.00
TOTAL FEE AWARDED                        $20,917.50

# EXHIBIT C

7/2003 16:09 FAX 2022750059                Consumer Complaints                    ☑001



**FEDERAL MARITIME COMMISSION**
**Office of Consumer Complaints**
800 North Capitol Street, N.W.
Washington, D.C. 20573-0001
Complaints@FMC.gov

**April 17, 2003**

Bureau of Consumer
Complaints & Licensing

Phone:   (202) 523-5807
Fax:     (202) 275-0059

NUMBER OF PAGES:    (including this page)    _6_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RECIPIENT**
# Roy Leon
# Peter S. Herrick
# Attorney at Law

Bond

JGI NVOCC 198

TELEPHONE NUMBER:   305-858-2332
FAX NUMBER:          305-858-6347

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SENDER**
## Allen E. Jackson
AllenJ@FMC.gov
Office of Consumer Complaints

TELEPHONE NUMBER:   202-523-5807
FAX NUMBER:          202-275-0059

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
SPECIAL INSTRUCTIONS:
    I have also enclosed a copy of the agent's letter to us (the last page).  Perhaps
going through the agent would help Hartford Fire Insurance Co. locate their files.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

14986
4395NF

## Form FMC-48
### FEDERAL MARITIME COMMISSION

#### Ocean Transportation Intermediary (OTI) Bond
#### (Section 19, Shipping Act of 1984, as amended by the Ocean Shipping Reform
#### Act of 1998 and the Coast Guard Authorization Act of 1998)

SUPERIOR LINK INTERNATIONAL, INC.  [NVOCC], as Principal (hereinafter "Principal"), and Hartford Fire Insurance Co., as Surety (hereinafter "Surety") are held and firmly bound unto the United States of America in the sum of Seventy Five Thousand Dollars $75,000.00 for the payment of which sum we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally.

Whereas, Principal operates as an OTI in the waterborne foreign commerce of the United States in accordance with the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998 and the Coast Guard Authorization Act of 1998 ("1984 Act"), 46 U.S.C. app 1702, and, if necessary, has a valid tariff published pursuant to 46 CFR part 515 and 520, and pursuant to section 19 of the 1984 Act, files this bond with the Commission;

Now, Therefore, The condition of this obligation is that the penalty amount of this bond shall be available to pay any judgment or any settlement made pursuant to a claim under 46 CFR § 515.23(b) for damages against the Principal arising from the Principal's transportation-related activities or order for reparations issued pursuant to section 11 of the 1984 Act, 46 U.S.C. app. 1710, or any penalty assessed against the Principal pursuant to section 13 of the 1984 Act, 46 U.S.C. app. 1712.

This bond shall inure to the benefit of any and all persons who have obtained a judgment or a settlement made pursuant to a claim under 46 CFR § 515.23(b) for damages against the Principal arising from its transportation-related activities or order of reparation issued pursuant to section 11 of the 1984 Act, and to the benefit of the Federal Maritime Commission for any penalty assessed against the Principal pursuant to section 13 of the 1984 Act. However, the bond shall not apply to shipments of used household goods and personal effects for the account of the Department of Defense or the account of federal civilian executive agencies shipping under the International Household Goods Program administered by the General Services Administration.

Form FMC-48
(Rev 05/99)                                      1



The liability of the Surety shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall aggregate the penalty of this bond, and in no event shall the Surety's total obligation hereunder exceed said penalty regardless of the number of claims or claimants.

This bond is effective the _____ 24TH day of JUNE , 2002 , and shall continue in effect until discharged or terminated as herein provided. The Principal or the Surety may at any time terminate this bond by written notice to the Federal Maritime Commission at its office in Washington, DC. Such termination shall become effective thirty (30) days after receipt of said notice by the Commission. The Surety shall not be liable for any transportation-related activities of the Principal after the expiration of the 30-day period but such termination shall not affect the liability of the Principal and Surety for any event occurring prior to the date when said termination becomes effective.

The Surety consents to be sued directly in respect of any bona fide claim owed by Principal for damages, reparations or penalties arising from the transportation-related activities under the 1984 Act of Principal in the event that such legal liability has not been discharged by the Principal or Surety after a claimant has obtained a final judgment (after appeal, if any) against the Principal from a United States Federal or State Court of competent jurisdiction and has complied with the procedures for collecting on such a judgment pursuant to 46 CFR § 515.23(b), the Federal Maritime Commission, or where all parties and claimants otherwise mutually consent, from a foreign court, or where such claimant has become entitled to payment of a specified sum by virtue of a compromise settlement agreement made with the Principal and/or Surety pursuant to 46 CFR § 515.23(b), whereby, upon payment of the agreed sum, the Surety is to be fully, irrevocably and unconditionally discharged from all further liability to such claimant; provided, however, that Surety's total obligation hereunder shall not exceed the amount set forth in 46 CFR § 515.21, as applicable.

The underwriting Surety will promptly notify the Director, Bureau of Tariffs, Certification and Licensing, Federal Maritime Commission, Washington, DC 20573, of any claim(s) against this bond.

Form FMC-48
(Rev. 05/99)

04/17/2003 16:10 FAX 2022750059        Consumer Complaints                       ☑004

Signed and sealed this __24 th__ day of __JUNE_____, __2002__.

(Please type name of signer under each signature.)

_____    Individual Principal or Partner

_____    Business Address

_____    Individual Principal or Partner

_____    Business Address

_____    Individual Principal or Partner

_____    Business Address


Trade Name, If Any

SUPERIOR LINK INTERNATIONAL, INC.    Corporate Principal

CALIFORNIA STATE_____    State of Incorporation


Trade Name, If Any
380 S. LEMON AVENUE
WALNUT, CA  91789_____    Business Address

_____    By
   GENERAL MANAGER
_____    Title
Affix Corporate Seal)


Hartford Fire Insurance Company    Corporate Surety
One Exeter Plaza
Boston, MA 02116_____    Business Address

James M. Gorman_____    By

Attorney-In-Fact_____    Title
(Affix Corporate Seal)


Form FMC-48
(Rev. 05/99)                         3

JGINVOCC198



04/17/2003 16:10 FAX 2022750059          Consumer Complaints                    ☑005

# THE HARTFORD
HARTFORD PLAZA
HARTFORD, CONNECTICUT 06115

| X | Hartford Fire Insurance Company |
| X | Hartford Casualty Insurance Company |
| X | Hartford Accident and Indemnity Company |
|   | Hartford Underwriters Insurance Company |

Twin City Fire Insurance Company

Hartford Insurance Company of Illinois

Hartford Insurance Company of the Midwest

Hartford Insurance Company of the Southeast

KNOW ALL PERSONS BY THESE PRESENTS THAT the *Hartford Fire Insurance Company, Hartford Accident and Indemnity Company* and *Hartford Underwriters Insurance Company,* corporations duly organized under the laws of the State of Connecticut; *Hartford Insurance Company of Illinois,* a corporation duly organized under the laws of the State of Illinois; *Hartford Casualty Insurance Company, Twin City Fire Insurance Company* and *Hartford Insurance Company of the Midwest,* corporations duly organized under the laws of the State of Indiana; and *Hartford Insurance Company of the Southeast,* a corporation duly organized under the laws of the State of Florida; having their home office in Hartford, Connecticut, (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint, up to the amount of unlimited:

James M. Gorman, Monica T. Cecconi
of
Boston, MA

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

In Witness Whereof, and as authorized by a Resolution of the Board of Directors of the Companies on September 12th, 2000, the Companies have caused these presents to be signed by its Assistant Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



Paul A. Bergenholtz, Assistant Secretary

John P. Hyland, Assistant Vice President

STATE OF CONNECTICUT }
                        } ss.    Hartford
COUNTY OF HARTFORD     }

On this 19ᵗʰ day of September, 2000, before me personally came John P. Hyland, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hartford, State of Connecticut; that he is the Assistant Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.

CERTIFICATE

Jean H. Wozniak
Notary Public
My Commission Expires June 30, 2004

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of June 24, 2002

Signed and sealed at the City of Hartford,



Colleen Mastroianni, Assistant Vice President

ICINVOCC100



JAMES GORMAN INSURANCE, INC.

July 1, 2002

Attn: Marty Wilson
Federal Maritime Commission
800 North Capitol Street, N.W.
Room 924
Washington, D.C. 20573

Re: NVOCC Bond: Superior Link International, Inc.

Dear Marty,

Please accept the enclosed NVOCC bond. If there are any problems or questions
regarding this bond please contact our office.

Thank you for your prompt attention to this matter.

Regards,
James Gorman Insurance, Inc.

Lisa Vega
Bond Department

One Exeter Plaza
Third Floor
Boston, MA 02116

Phone: 617-266-4100
Fax: 617-266-7220
Email: www.JamesGormanInsurance.com



## peter s herrick

**From:** "Chris Linzey" <clinzey@jamesgormaninsurance.com>
**To:** <pherrick@bellsouth.net>
**Sent:** Friday, November 03, 2006 12:44 PM
**Subject:** Qin's v Superior Link International, Inc.

Dear Mr. Herrick,

Please accept this email as notice that we are in receipt of your 09/25/06 and 10/23/06 claim letters to Hartford regarding the above captioned matter. (FMC Docket No: 04/08)

Please know this office handles all OTI bond claims for Hartford. Please direct any future communications to us, as opposed to Hartford Plaza CT, unless such communication is in response to contact by our counsel.

We are reviewing the documents submitted and will respond to you within a couple weeks. If you have any questions in the mean time please feel free to contact our office.

Best regards,

Christopher Linzey
James Gorman Insurance, Inc.

Hartford Fire Insurance Co.
Attorney-In-Fact

One Exeter Plaza, 3rd Floor
Boston, MA 02116

617-266-4100 ext. 21
617-266-7220 fax

# EXHIBIT D

# PETER S. HERRICK, P.A.
## ATTORNEYS AT LAW

**MAIL TO:**
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Of Counsel: Roy Leon

301 East Ocean Blvd.
Suite 530
Long Beach, CA 90802
Tel. 562-628-2355
Email. pherrick@bellsouth.net
Web. CustomsLawyer.Net

September 8, 2006

**MAIL & TELECOPY (860-757-1550)**

Hartford Fire Insurance Company
Hartford Plaza
Hartford, CT 06115

Attn:  Robert K. Grennan
Fidelity and Surety Claim Department

RE:  Qin's, Inc. v. Superior Link International, Inc.
Federal Maritime Commission Docket No.: 04-08
Bond No.: JGINVOCC198

Dear Mr. Grennan:

I am representing Qin's, Inc. in the referenced litigation.  My office had previously inquired on making a formal demand on Superior Link International, Inc.'s bond for various shipping violations.  Reference is made to your enclosed letter dated April 25, 2003 in which you requested a judgment or settlement in order for my client to invoke its rights under the referenced bond.

Qin's, Inc. formally submits its formal demand for payment of the Federal Maritime Commission ["FMC"] reparation order and its legal claim on Bond No.: JGINVOCC198 pursuant to 46 CFR §515.23(a).  The FMC awarded reparations in the amount of $7,250.00,

1

plus interest, to Qin on July 17, 2006. Enclosed as Exhibit A is a copy of the decision.

Superior Link International, Inc. failed to make timely payment of $7,859.50 pursuant to the FMC's Notice dated July 17, 2006. Enclosed as Exhibit B is a copy of the FMC's notice. Superior did not file an appeal or a request for a review of the reparations award as referenced in the enclosed FMC Notice. Superior may not file an appeal in a U.S. District Court for it has failed to exhaust all administrative remedies by filing a timely appeal of the reparations award within the above referenced time restraints.

Therefore, we request payment immediately due to Superior's failure to comply with the FMC's reparation order. Please issue the payment in the amount of $7,859.50 in the name of Qin's, Inc., C/O Peter S. Herrick and mailed it to my office at 3520 Crystal View Court, Miami, FL 33133.

Sincerely,

Peter S. Herrick

cc:    Qin's, Inc.

       Peiwen Chang, Esq, and Theodore W. Frank Esq,
       Attorneys for Superior Link International, Inc.
       115 Pine Avenue, Suite 600
       Long Beach, CA 90802-4449

2



April 25, 2003

Peter S. Herrick, Esq.
3520 Crystal View Court
Miami, FL 33133

RE:  **Principal:**  **Superior Links International, Inc.**
     **Bond No.:**   **JGINVOCC198**

Dear Mr. Herrick:

Your letter dated April 16, 2003 was forwarded to my attention for handling.

I have reviewed the documentation supplied and at this time must respectfully deny the claim at hand. Pursuant to the bond, if a claimant wants to invoke its rights under the bond, it must have either a Judgment or a settlement made pursuant to a claim under 46 CFR Section 515.23(b). This documentation was not included with the claim submitted and if you possess such Judgment or settlement, please provide it and I will continue my investigation in this matter.

Until such time that a Judgment is rendered or a settlement reached, I cannot take any further action pursuant to the requirements of the bond.

If you have any questions, please feel free to contact me.

Very truly yours,
**HARTFORD FIRE INSURANCE COMPANY**

Robert K. Grennan
Fidelity and Surety Claim Department
Phone: (888) 266-3488 x 78237
        (860) 547-8237
Fax:    (860) 757-1550

RKG/ehl

C 07-305
RWR

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| QIN'S, INC. | SUPERIOR LINK INTERNATIONAL, INC. AND HARTFORD FIRE INSURANCE COMPANY |

88868

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Peter S. Herrick
Peter S. Herrick, P.A.
3520 Crystal View Court
Miami, FL 33133
305-858-2332

CASE NUMBER    1:07CV00305

JUDGE:  Richard W. Roberts

DECK TYPE:  Administrative Agency Rev___

DATE STAMP: 02/██/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**◉ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

46 U.S.C. 40902(b)(1) - defendants must pay orders of reparations and attorneys fees issued by the Federal Maritime Commission.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  02/07/2007    SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.